IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK



IN RE: SUBPOENA ON
CHRISTOPHER V. LANGONE

)
) 5 13 mc 53
)
   NAm/ATB

### MOTION TO QUASH OR MODIFY SUBPOENA
### AND FOR ATTORNEYS' FEES AND COSTS

This motion comes before the Court in opposition to the latest in a series of

attempts by Caribbean Cruise Lines ("CCL"), a Defendant in a putative class action

pending in Chicago, Illinois, to harass and burden one of the former attorneys

investigating and pursuing private plaintiffs' claims against CCL. In early August 2013,

counsel for defendant CCL emailed an "intent to issue subpoenas" to movant,

Christopher Langone ("Langone"), an attorney and resident of Ithaca, New York.

Mr. Langone was formally co-counsel for the plaintiff in *Volpe v. CCL*, 13 C

1646 (N.D. Ill), a putative class action seeking redress under state and federal law for

illegal text messages in violation of the federal Telephone Consumer Protection Act

("TCPA") and deceptive "free cruise" offers in violation of Illinois state law. But due to

timing, geographical constraints, and Langone's responsibilities to teach college and

complete his dissertation in Ithaca, New York, Langone decided to withdraw from *Volpe*,

and he is no longer counsel of record.

This fact has not deterred CCL from pursuing its irrelevant and harassing

subpoena – which effectively seeks Mr. Langone's entire online "footprint" – retaliation

for his having challenged CCL's deceptive business practices; practices that have

repeatedly been the subject of lawsuits and investigations by private citizens, attorneys

general, and the Federal Trade Commission. There is no issue in *Volpe* on which

information about Langone could conceivably be relevant. Langone is not a class

member, is not a witness, and is not currently suing CCL.  Langone did receive texts from CCL, but he is in a unique situation because he has been engaged in extensive investigations of a variety of on-line marketing scams since July 2013, including illegal online sweepstakes, on-line gambling scams, penny auction scams, gift card scams, and – of course – CCL's deceptive "free cruise offer."

CCL's subpoena – if enforced as written – would require dozens of hours to comply with: it would require review of dozens of hours of screen-shot footage of on-line investigations and/or recorded telephone calls with CCL (much of which would otherwise also be covered by work-product privilege and require the preparation of extensive privilege logs).  And, notwithstanding counsel's duty to reduce both the burden and costs of compliance, counsel for CCL has refused multiple requests by Mr. Langone for a telephone conference to discuss these issues, insisting instead that Mr. Langone place his concerns in writing.  This motion serves as Mr. Langone's written response to the subpoena (which, incidentally, was also never validly served – as argued below).

The subpoena issued by counsel for CCL is so broad that it can only be construed as to request every email Mr. Langone has ever sent or received, every single marketing or promotional website he has ever visited, and every IP address associated with any device he has ever owned or used.  Even more important than its stunning scope – which is not limited in timeframe – is the fact that the requested documents are not conceivably relevant to *Volpe* because Langone is not a party, class member, or witness in that case, (indeed, he is not even co-counsel anymore), and none of the documents are relevant to any issue in *Volpe*.  The subpoena is pure harassment of an adversaries' counsel (and now former counsel).  It is a classic instance of the oldest trick in the "Rambo-litigator"

2

handbook: harass your adversary's counsel. But now Mr. Langone is not even counsel, he is a private citizen (who happens to be an attorney) and the invasive, irrelevant subpoena should be quashed and/or modified – and CCL should bear any and all costs of compliance, which are, have been, and will continue to be substantial.

Rule 45(c)(1) of the Federal Rules of Civil Procedure is designed precisely to protect third parties from abusive subpoenas such as the one issued by CCL. The irrationally broad scope, the largely irrelevant material sought, and the impossibly short time permitted for compliance, all serve to render this subpoena unduly burdensome on its face. Mr. Langone respectfully requests that this Court quash the subpoena. In the alternative, Langone requests the subpoena be limited in its scope so that only documents directly relevant to *Volpe* are required. Additionally, Langone requests that this Court grant him an award of reasonable attorney fees and costs per Fed. R. Civ. P. 45(c)(1).

## FACTS AND PROCEDURAL HISTORY

Chris Langone is an attorney, who is also completing his PhD in Ithaca, New York. He practices law part time, primarily over the summer, on breaks, as his academic schedule will allow. Before starting in the Ph.D. program at Cornell University in 2006, Langone was a consumer-protection and civil rights attorney in Chicago, Illinois. When Langone started at Cornell, he closed his law firm and ceased the full-time practice of law in Chicago. Langone continued in some cases, first, to fulfill his professional responsibilities; and subsequently, in a part-time capacity as co-counsel.

This summer, Langone entered an appearance in a case pending in the Northern District of Illinois captioned *Volpe v. Caribbean Cruise Lines*, 13 C 1646. Langone had been investigating a variety of on-line scams since the summer of July 2013, and when he

3

spoke with his former law partner about the results of his work, he was invited into the case to assist.  During the summer of 2013, Langone continued his extensive investigation of Caribbean Cruise Lines' various illegal marketing practices towards consumers, as well as the conduct of on-line scammers such as penny auction sites, deceptive gift-,card offers, and gambling scams.  Langone had also been investigating Alan Thicke in relation to his potential celebrity-endorser liability.

Caribbean Cruise Line is the seller of travel for trips to the Bahamas on a converted Scandinavian ferry called the Bahamas Celebration.  Caribbean Cruise Line is not affiliated with Royal Caribbean Cruise Line or any other major established cruise line. Caribbean Cruise Line has an "F" rating with the Better Business Bureau.  The Federal Trade Commission and State of Florida have recently initiated investigations into its unfair business practices.  In response, Caribbean Cruise Line have responded aggressively by filing civil actions against the Federal Trade Commission and the State of Florida.

Recently, Mr. Langone started a full-time academic appointment for the Fall semester of 2013 and the Spring semester of 2014.  In order to dedicate appropriate attention to this job, Mr. Langone withdrew his appearance in *Volpe*, and is in the process of perfecting his lien and withdrawing from his other case in the Northern District of Illinois.  He is thus a third party to the *Volpe* dispute: he is not a party; not a witness; and no longer is counsel of record.

Nonetheless, counsel for CCL is seeking to harass Langone with needless, irrelevant, and burdensome discovery requests that are not reasonably calculated to lead to the discovery of admissible evidence in *Volpe*.  *Volpe* is a putative class action,

asserting claims under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. 227, which prohibits unsolicited voice and text calls to cell phones. *Volpe* is not the only case pending against CCL. There is also pending in Chicago a putative class action for illegal robo-calling, in also in violation of the TCPA.

The case in Chicago has been very contentious, and has not been going well for CCL. CCL's motion to dismiss was denied. Then, on May 9, 2013, the Federal Communication Commission ruled that sellers could be held liable under the TCPA even when the seller did not make or initiate the call. The FCC ruled that sellers could be held liable under agency theories, ratification theories and apparent authority for the acts of telemarketers. One of the issues in the case was thus whether CCL was aware of, ratified, endorsed, or benefited from the actions of its marketing agents. In discussing the scope and propriety of discovery requests issued in this regard, counsel for CCL represented that all texting had stopped as of March 2013 (or words to that effect). Langone replied that could not possibly be true, as he himself had received a free cruise text from CCL just the prior week (in July 2013). Counsel for CCL asked for a copy of the text, which Langone supplied – and then this subpoena ensued.

The subpoena seeks what can only be described as virtually every electronic communication Mr. Langone has ever made via email or text message, in addition to a myriad of documents protected by the work-product doctrine. The full text of the document requests at issue is attached as Exhibit A; the breathtaking scope and breadth of the requests is indicated by their simplicity and complete lack of limiting provisions.

Despite the fact that Mr. Langone had made no representation that he would attempt to evade service (indeed CCL's attorneys never even asked Langone if he would

accept service), CCL retained a process server to deliver the subpoena to Mr. Langone's home address in Ithaca, New York.  When service was attempted, however, Mr. Langone happened to be away from home, in Evanston, IL. The process server telephoned Mr. Langone, who informed the server of his current location (in Evanston), offered to provide an address at which he could be served while in Illinois, and stated when he would return to Ithaca. He then commented that he would be happy to accept service upon his return if a more convenient solution could not be reached. Inexplicably, Mr. Bachmann then falsely represented to the federal court in Illinois that Mr. Langone had told the process server that he was "out of the country," or words to that effect. This representation was completely untrue and part of an emerging pattern of false statements being made before the court by counsel for CCL. In response to Mr. Bachmann's significant misrepresentation concerning Mr. Langone's acceptance of service, and in response to the magistrate judge's request to "as a courtesy to the court," Volpe's counsel, Mr. Lavery, stated he would agree to accept service on Mr. Langone's behalf.[1] Even though Mr. Lavery stated he would accept service of the subpoena, CCL never proceeded to then actually serve the subpoena to Mr. Lavery, Mr. Langone, or anyone else. So, if the technical requirements of Fed. R. Civ. P. 45(b) were to be strictly enforced, as the law requires, then the subpoena should be quashed for lack of service – because even though Mr. Lavery stated he would accept service, he was not served.

---

[1] The court's minute order stated: "Mr. Lavery, at the court's request, and in light of claimed difficulties in serving Mr. Langone with certain communications, has agreed to accept service of any subpoenas or discovery materials in this case directed to Mr. Langone." Mr. Langone was not at this hearing, or part of this decision.  The "claimed difficulties" were false – there was no good faith effort to serve Langone. And notwithstanding this "agreement" no "subpoenas or discovery materials" were served on Lavery. Now, Langone is no longer in the case, and insists on his rights under Rule 45.

Subsequent to "acceptance" of service by Mr. Lavery, Mr. Langone received communications from Mr. Bachmann's office demanding production of documents despite the fact that the subpoena itself established no required time for compliance, and the presumptively reasonable 14 days from "service" had not yet elapsed. Indeed, technically, this time period has not even started to run, as the subpoena was not properly served. Langone made multiple calls to Mr. Bachman's office requesting that a telephone conference be set to discuss the issues related to the subpoena – but CCL insists Langone respond in writing.  This is his written response.

## ARGUMENT

I.      **CCL'S OVERBROAD, ABUSIVE SUBPOENA SHOULD BE QUASHED AND ATORNEYS' FEES AND COSTS AWARDED BECAUSE THE SUBPOENA FAILS TO ALLOW A REASONABLE TIME TO COMPLY, REQUIRES THE DISCLOSURE OF PROTECTED WORK PRODUCT, AND IS EGREGIOUSLY BURDENSOME IN SCOPE.**

Fed. R. Civ. P. 45(c)(3)(A) requires a court quash or modify a subpoena when it:

(i) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

Fed. R. Civ. P. 45(c)(3)(A). Here, the subpoena must be quashed or modified on three of these grounds: the subpoena is unduly burdensome, it requires disclosure of protected work product, and it does not allow a reasonable time for compliance.

> *A. The subpoena is unduly burdensome because it is highly invasive, would require an extensive expenditure of time and money for compliance due to commingling of requested information with protected work product, and seeks almost exclusively irrelevant information.*

A subpoena imposes an "undue burden" upon a non-party when the burden to the subpoenaed party outweighs the value to the information to the serving party. *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005). In conducting this analysis of competing needs, particular consideration is given to the fact that the subpoenaed party is a non-party upon whom an unwanted burden is being thrust. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998). Whether "a subpoena imposes an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Travelers Indem. Co.* at 113, *citing U.S. v. Intl. Bus. Machines Corp.,* 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

Where subpoenas are so broadly drafted that they seek discovery of virtually every document of a certain type created by the subpoenaed party over a period of years, courts have not hesitated to quash. *See Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (subpoena quashed as unduly burdensome where it requested "all documents" related to a particular client, in a number of iterations, with no further narrowing of scope). *See also Mattel, Inc. v. Walking Mt. Productions,* 353 F.3d 792, 813 (9th Cir. 2003)

(overbroad subpoena "abusively drawn" because seeking party did not tailor information request to the immediate needs of the case).

Here, CCL has presented a list of twelve document requests. Exactly as in *Concord*, every single request begins with the phrase "[a]ll documents," with little further limitation of scope. And as in *Mattell*, the subpoena is not tailored to the immediate needs of *Volpe*. For instance, CCL requests "[a]ll telephone records evidencing any SMS text messages" Langone has received advertising a free cruise. This information is irrelevant. Mr. Langone is not a Plaintiff in *Volpe v. CCL*. He no longer even represents a party in *Volpe*. He is not a member the *Volpe* proposed class. Any information concerning promotions Mr. Langone has personally received from CCL could only be relevant to the question of CCL's liability to Mr. Langone personally – and no such litigation yet exists. And even if such litigation existed, CCL could not seek access to such related information under the auspices of the *Volpe* litigation. The information sought is materially useless to CCL except for the purposes of continued harassment and intimidation. The same is true for Document Requests 2 through 5, similarly seeking information that is not material, or even related, to CCL's liability to *Volpe* class members.

Indeed, the true reason CCL desires this information is that it contains records of extensive pre-suit investigations that Mr. Langone has engaged in, with regards to CCL and many other cases and defendants. This information is protected work-product, created in anticipation of litigation. Given the stunning scope of the subpoena, which is not limited in time, it includes hundreds of

9

screenshots and extensive archived video that reflects litigation strategy not only for the remaining *Volpe* counsel, but for several other consumer protection class actions that have nothing to do with CCL. The amount of time and effort that would be required in order to separate records protected by the work-product doctrine from those that are not (and prepare a privilege log) would be extensive for an entire law firm; for Mr. Langone, who is one person, it would take weeks – Langone estimates over 40 hours of work in complying, and given his full time job and teaching obligations he would have to dedicate all his free time between now and mid-October in dealing with this subpoena. This is not fair or reasonable; and if CCL insists (and the court so orders) – then CCL, not Langone, should pay the attorneys-fee time required to comply.

Document Request 3 seeks "all documents evidencing any e-mail addresses used by you." This request is absurd on its face. If taken even remotely literally, this request would seek every single e-mail ever sent or received by Mr. Langone, in addition to any document, correspondence, or court pleading ever drafted containing Mr. Langone's contact information. A copy of every business card used by Mr. Langone would have to be included as well. This information is irrelevant for the same reasons stated above, but even were it not, the scope of this open-ended, non-time-limited request would be hopelessly overbroad.

Document Request 4 is slightly more specific but much more invasive: it seeks IP addresses - or rather more broadly, "all documents evidencing" IP addresses – for every internet-connected device Mr. Langone has ever used. IP addresses are extremely private information and can be used to hack into

computers and compromise a person's identity.  Security consultants advise to

protect the confidentiality of one's IP address in the same way as an  ATM pin

number, or social security number.  And based on undersigned counsel's

investigation, CCL is – and is dealing with – some very unreliable and

untrustworthy individuals.  Ben Langille, for instance, whose company may have

sent the text, may be connected with computer-hacker rings – and is based in

Canada.[2]  If Langone's information falls into the wrong hands, and his computer

is hacked, the damage would be irreparable.  Langone should not be forced to face

this risk simply because he helped represent someone who sued CCL.  Indeed,

numerous complaints exist on internet forums that CCL is engaging in credit card

fraud and charging people's cards without authorization.  In other words, a

company being accused of electronic credit-card fraud, among other practices

involving significant technical sophistication like blast texting, is seeking access

to the personal electronic identifying information of an opposing attorney.  Most

importantly, this information is irrelevant, but the fact that it was even requested

bears consideration in evaluating the burdens under Fed. R. Civ. P. 45(c)(3)(A).

Document Request 6 seeks "[a]ll documents evidencing your relationship

with Plaintiff, Mark Volpe." Mr. Langone was not the attorney initially retained

by Mark Volpe, and has no relationship with him outside of the attorney-client

---

[2] It appears like this is the same Ben Langille who was arrested in a organized crime related drug bust http://www.cbc.ca/news/canada/nova-scotia/story/2010/02/03/ns-olympics-ecstasy-halifax.html and who misrepresents an on-line internet marketing certificate (on his Linked-In profile) as a "masters" degree. So, Langone is being asked basically to give his private information to liars, hackers, and criminals – or a least to take that risk.  This is not a risk Langone wants to take.

relationship that is now no longer in effect. The only documents evidencing any

relationship between Langone and Volpe are pleadings that Mr. Langone

participated in drafting, and communications related thereto. The former are

protected as work product, and the latter are privileged. CCL is entitled to neither.

> B. *The Subpoena provides minimal time for compliance, despite the fact*
> *that achieving such compliance would require dozens of hours of*
> *work, or more.*

Fed. R. Civ. P. 45(c)(3)(A)(i) requires that all third-party subpoena

provide reasonable time for compliance. Although Rule 45 does not define

"reasonable time," many courts have found fourteen days from the date of service

as presumptively reasonable in light of the language of Rule 45(c)(2)(B). *See, e.g.*

*In re R. 45 Subp. Issued to Cablevision Sys. Corp. Regarding IP Address*

*69.120.35.31*, 08-347 ARR MDG, 2010 WL 2219343 (E.D.N.Y. 2010) report and

recommendation adopted in part, 08MC347 ARR MDG, 2010 WL 1686811

(E.D.N.Y. 2010); *See also*, *In re Rule 45 Subpoena to Fidelity Nat'l Info. Servs.,*

*Inc.*, No. 3:09–mc–29–J–25TEM, 2009 WL 4899399, at *1 (M.D.Fla. Dec. 11,

2009) (*citing McClendon v. TelOhio Credit Union, Inc.*, No. 2:05–CV–1160,

2006 WL 2380601 (S.D.Oh. Aug. 14, 2006). Here, CCL provided Mr. Langone

less than 14 days to respond to the subpoena, and has already repeatedly

demanded production of the requested documents.  But given the egregiously

broad scope of CCL's document requests, it would be difficult for a reasonable

person in Mr. Langone's position to comply in the standard 14 days; to do so in

the time afforded him by the subpoena is not only unreasonable but also

physically impossible. Langone cannot comply with the subpoena before October

12

31, 2013 given his job responsibilities, and duties related to the completion of his dissertation. Indeed, the time required to prepare this motion has taken time away from Langone's classroom preparation and required 15 hours of attorney work. Langone requests those fees at usual market rates (for upstate New York) of $350 per hour.

C. *Mr. Langone is entitled under Fed. R. Civ. P. 45(c)(1) to his reasonable attorneys' fees and costs incurred in opposing and responding to this subpoena.*

Fed. R. Civ. P. 45(c)(1) imposes an affirmative duty upon a party seeking a third-party subpoena to ensure that the subpoena does not impose an undue burden or expense on the subpoenaed party. If the serving party violates this duty and such a burden is imposed, the issuing court is required to "enforce this duty and impose an appropriate sanction," including but not limited to lost earnings and reasonable attorneys' fees. *Id.* "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)." *Molefi v. Oppenheimer Trust*, 03 CV 5631 FBVVP, 2007 WL 538547 (E.D.N.Y. 2007), *citing Builders Ass'n of Greater Chicago*, 2002 WL 1008455, at *4. Numerous courts have awarded a sanction of reasonable attorneys' fees and costs to subpoenaed third-parties where subpoenas have been quashed. *Id. See also, In re R. 45 Subp. Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, 08-347 ARR MDG, 2010 WL 2219343 (E.D.N.Y. 2010); *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003); *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76 (D. Del. 2009) (third party entitled as a matter of law to

13

costs incurred in responding to a subpoena that imposed an undue burden because

it did not comply with all of the requirements of Fed. R. Civ. P. 45(c)(3)(A));

*Bentley v. LCM Corp.*, 2009 WL 2600093 (W.D. La. 2009) (recipient of subpoena

entitled to award of attorneys' fees and costs where subpoena was issued only to

"harass and annoy"); *Anderson v. Government of the Virgin Islands*, 180 F.R.D.

284 (D.C.Virgin Islands 1998) (award of attorney's fees justified where subpoena

imposed an undue burden as a matter of law because it did not comply with

several provisions of Fed. R. Civ. P. 45(c) and (d)).

## II.   LANGONE IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS INCURREDBECAUSE THEY AMOUNT TO A "SIGNIFICANT EXPENSE."

Langone is entitled under Fed. R. Civ. P. 45(c) to an award of costs and attorney's

fees incurred in responding to the subpoena at issue. Fed.R.Civ.P. 45(c)(2)(B) and Fed.

R. Civ. P. 45(c)(1) require a court award attorneys' fees and costs incurred by a third-

party responding to a subpoena if such costs amount to a "significant expense." *Linder v.

Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001). Such an award is not

discretionary, but mandatory. *Id.* In determining whether expenses are "significant" under

Rule 45(c)(1), "courts generally review such factors as 1) the scope of the discovery; 2)

the depth of the invasion involved in the request; 3) the extent to which the producing

party must separate responsive information from privileged or even irrelevant material;

and, 4) the reasonableness of the expenses involved in making the production." *Stand.

Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 263 (D. Del. 1992), *citing

Onan Corp. v. GLT Industries*, No. 87 C 5592, 1988 WL 2804 (N.D.Ill.1988).

In considering these factors, courts have found costs as little as $1,750 to be substantial enough to warrant prospective relief. *See Standard Chlorine* at 265; *See also Williams v. City of Dallas,* 178 F.R.D. 103, 113 (N.D. Tex. 1998)(acknowledging an amount of $9,000 as "substantial" pending further proof that costs would actually amount to that sum); *Linder* at 182 (cost "significant" because of disparity in economic status between third-party and party seeking subpoena).  In addition to "costs," courts have used Rule 45(c)(1) liberally in order to award reasonable attorney's fees and costs incurred by third parties in responding to subpoenas. *See Mattel, Inc. v. Walking Mountain Productions,* 353 F.3d 792, 813 (9th Cir. 2003); *Hallamore Corp. v. Capco Steel Corp.,* 259 F.R.D. 76 (D. Del. 2009); *Bentley v. LCM Corp.,* 2009 WL 2600093 (W.D. La. 2009); *Anderson v. Government of the Virgin Islands*, 180 F.R.D. 284 (D.C.Virgin Islands 1998). Significantly, courts have awarded attorney's fees to a third-party in responding to a subpoena even when the third-party *himself* is the attorney billing time for the response. *See High Tech Med. Instrumentation, Inc. v. New Image Industries, Inc.,* 161 F.R.D. 86, 88 (N.D. Cal. 1995) (former attorney for party in patent litigation awarded reasonable fees for his response to a third-party subpoena issued by the opponent of his former client, in relation to the litigation in which he was no longer a participant).

WHEREFORE, movant Christopher V. Langone, respectfully requests that this Court quash the subpoena issued on him and/or order CCL pay costs of compliance with the subpoena and/or any modifications of the subpoena.

Respectfully

Christopher V. Langone
207 Texas Lane
Ithaca, New York, 14850
(607) 592-2661